IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

EDWARD CONAWAY, # 281-7238,     *

Plaintiff     *

v     *    Civil Action No. RDB-17-3534

WARDEN MICHAEL CAPASSO, HARFORD *
   COUNTY JAIL,[1]
SGT. DANNY M. HASLUP,     *

Defendants     *
                                                             ***

**MEMORANDUM OPINION**

Self-represented Plaintiff Edward Conaway, a Maryland Division of Correction ("DOC") prisoner currently confined at Western Correctional Institution ("WCI"), seeks compensatory damages against Harford County Detention Center ("HCDC") Warden Michael Capasso and HCDC employee Sgt. Danny Haslup. Conaway alleges that while detained on cell restriction at HCDC, he was denied showers by Haslup for up to 17 days, beginning on October 31, 2016. ECF 1.[2]

Defendants have responded by filings a Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 8), which Conaway has opposed. ECF No. 10. After considering the pleadings, exhibits, and applicable law, the Court now rules pursuant to Local Rule 105.6 (D. Md. 2016), as a hearing on the Motion is deemed unnecessary. For reasons to follow, Defendants' Motion is GRANTED.

---

[1] The Clerk shall amend the docket to reflect the full spelling of Defendants' names.

[2] This Memorandum Opinion references page citations assigned by the Court's electronic docketing system.

## BACKGROUND

The parties do not dispute that while detained at HCDC, Conaway was placed on the Restrictive Housing Unit due to misbehavior, including threats, assaults on personnel, and destruction of property. ECF 8-2, Kahler Affd., ¶¶ 3, 6. Conaway remained in restrictive housing until his transfer to the Baltimore City Jail on November 17, 2016. ECF No. 10, p. 2.

Conaway claims he was denied showers from October 31, 2016 until his November 17, 2016 transfer. This claim is only partly disputed by Lt. Sean Kahler, who avers that on October 29, 2016, Conaway's opportunity to shower was cut short after he threatened staff, and that on November 2, 2016, Conaway was permitted to shower.[3] ECF No. 8-2, Kahler Affd., ¶¶ 7-8.

Kahler avers that Conaway received a handbook explaining the grievance system when he entered HCDC on July 11, 2016, and that Conaway did not file a grievance concerning the denial of showers. ECF No. 82, ¶¶ 9, 11. In his opposition response, Conaway states he wrote 10 grievance complaints concerning a lack of showers and toiletries. ECF No. 10, p. 2.

## STANDARD OF REVIEW

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In making this determination, "[t]he district court... must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint

---

[3] Although Kahler avers that Conaway received additional showers between October 31, 2016 and his transfer to the Baltimore City Jail, he does not support his statement with a verified record confirming his statement.

liberally." *White v. White,* 886 F. 2d 721, 722-723 (4th Cir. 1989). Given this standard, the Court has construed Conaway's allegation concerning the denial of showers as a conditions of confinement claim.

When a defendant seeks dismissal or, in the alternative, summary judgment, the Court may use its discretion, under Rule 12(d), to determine whether to consider matters outside the pleadings. *See Kensington Volunteer Fire Dep't., Inc. v. Montgomery Cty.,* 788 F.Supp.2d 431, 436–37 (D. Md. 2011), *aff'd sub nom., Kensington Volunteer Fire Dep't., Inc. v. Montgomery Cty.,* 684 F.3d 462 (4th Cir. 2012). Pursuant to Rule 12(d), "[w]hen matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(d)).

The United States Court of Appeals for the Fourth Circuit has outlined two requirements for when a motion to dismiss may be converted to a motion for summary judgment: (1) the "parties [must] be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment" and (2) "the parties 'first [must] be afforded a reasonable opportunity for discovery.'" *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). When the motion is expressly captioned as a motion to dismiss or in the alternative a motion for summary judgment and matters outside of the pleadings are submitted, the parties are deemed to have sufficient notice that conversion may be granted. *See Moret v. Harvey*, 381 F.Supp.2d 458, 464 (D. Md. 2005). "[T]he party opposing summary judgment 'cannot complain that summary judgment was granted without discovery

unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 961 (4th Cir. 1996). Here, Conaway has not filed an affidavit or otherwise requested discovery, other than the materials that have been made available to him.

In light of the foregoing, the Court is satisfied that it is appropriate to address Defendants' dispositive Motion as one for summary judgment, because matters outside of the pleadings will be considered. *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

Under Fed. R. Civ. P. 56(a), the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the Court must draw all justifiable inferences in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *accord Hooven-Lewis*, 249 F.3d at 265.

## ANALYSIS

There is no dispute that Conaway was a pretrial detainee while housed at HCDC. The constitutional protections afforded a pretrial detainee as provided by the Fourteenth Amendment

are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The inquiry with respect to the conditions alleged is whether or not those conditions amount to punishment of the pretrial detainee because due process proscribes punishment of a detainee before proper adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

"[N]ot every inconvenience that is encountered during pre-trial detention amounts to 'punishment' in the constitutional sense." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988) (citing *Bell*, 441 U.S. at 538-40). A particular restriction or condition of confinement amounts to unconstitutional punishment if it is imposed by prison officials with the express intent to punish or it is not reasonably related to a legitimate, non-punitive goal. *Bell*, 441 U.S. at 538-39 (restrictions or conditions that are arbitrary or purposeless may be considered punishment). In determining whether the challenged conditions amount to punishment, it is not the province of this Court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

Defendants seek summary judgment in their favor based on the affirmative defenses of qualified immunity, and also argue that Conaway has failed to exhaust administrative remedies and establish a conditions of confinement claim. Defendant Capasso also argues that he is not liable for damages under the doctrine of respondeat superior.

### A. Affirmative Defense

Defendants assert entitlement to qualified immunity, arguing that their conduct did not violate any clearly established constitutional right of which a reasonable public official should have known. ECF No. 8-1, pp. 7-8; *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *see also Iko v.*

*Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Qualified immunity is an "'immunity from suit rather than a mere defense to liability,'" *Ussery v. Mansfield*, 786 F.3d 332, 337 (4th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)), and shields government officials who commit constitutional violations but who, "in light of clearly established law, could reasonably believe that their actions were lawful" *Hunter v. Town of Mocksville, N.C.*, 789 F.3d 389, 401 (4th Cir. 2015) (internal quotations omitted); *see also Scinto v. Stansberry*, 841 F.3d 219, 235-36(4th Cir. 2016). In other words, qualified immunity "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, ––– U.S. –––, 134 S. Ct. 2369, 2381 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). Thus, "a government official who is sued in his individual capacity may invoke qualified immunity." *Bland*, 730 F.3d at 391; *see Harlow*, 457 U.S. at 818.

Qualified immunity turns on the "objective reasonableness of an official's conduct, as measured by reference to clearly established law," *Harlow*, 457 U.S. at 818, and so an official who makes an honest but objectively unreasonable mistake is not protected by qualified immunity. In *Scinto,* the Court explained: "In determining whether defendant government officials are protected by qualified immunity, the court considers both 'whether a constitutional right [was] violated on the facts alleged' and 'whether the right was clearly established' at the time of the conduct in question." 841 F.3d at 235 (citations omitted.) Thus, the qualified immunity analysis involves two inquiries: (1) whether the facts alleged, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a constitutional right," and (2) whether the right at issue "'was clearly established in the specific context of the case—that is, whether it was clear to a reasonable officer that the conduct in which he allegedly

engaged was unlawful in the situation he confronted.'" *Merchant v. Bauer,* , 677 F.3d 656, 662 (4th Cir. 2012) (quoting *Figg v. Schroeder*, 312 F.3d 625, 635 (4th Cir. 2002)) (brackets omitted).. The "two inquiries . . . may be assessed in either sequence." *Id.* at 661-62; *see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (judges may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first).

The second inquiry "turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Messerschmidt v. Millender*, ––– U.S. –––, 132 S. Ct. 1235, 1245 (2012) (citing *Creighton*, 483 U.S. at 639). If the law at the time of the alleged violation was not "clearly established," the official will be entitled to qualified immunity, because "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Harlow*, 457 U.S. at 818. On the other hand, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Id*. at 818-19.

To determine whether the right was clearly established, the court "first must define the right at issue." *Scinto,* 841 F.3d at 235. "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" *Carroll v. Carman*, ––– U.S. –––, 135 S. Ct. 348, 350 (2014) (quoting *Creighton*, 483 U.S. at 640). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *al-Kidd, supra*, 563 U.S. at 741).

In determining whether a right was clearly established, courts in this Circuit "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case arose,'" as of the date of the conduct at issue. *Doe ex rel.*

*Johnson v. S.C. Dept. of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir. 2010) (citations omitted). While a right may be clearly established by any number of sources, there need not be a case "directly on point . . . ." *al-Kidd*, 563 U.S. at 741.

To defeat qualified immunity, "'the existing authority must be such that the unlawfulness of the conduct is manifest.'" *Merchant*, 677 F.3d at 665 (quoting *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998)); *see Bland,* 730 F.3d at 391 ( "For a plaintiff to defeat a claim of qualified immunity, the contours of the constitutional right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (internal quotations omitted)).

Absent documentation supporting Kahler's averment that Conaway received additional showers in the two and a half weeks leading up to his transfer from HCDC, the Court is unable to undertake the two inquiries necessary in determining whether Defendants are entitled to qualified immunity. Therefore, examination of the conditions of confinement claim is required.

### B.     Liability of the Warden

Defendant Capasso contends that he had no personal involvement in any alleged wrongdoing, and thus incurs no liability under 42 U.S.C. § 1983. He is correct. Supervisory liability under §1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Conaway's claim against Capasso is, at most, based on a theory of *respondeat superior*, meaning he has not alleged that Capasso himself is responsible for denying him showers, but has imputed liability to Capasso based on the actions taken by Haslup, a correctional officer who worked within the agency under his supervision. It is well established that the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Conaway provides no nexus between the alleged wrongdoing and Capasso's administrative role as head of the HCDC, and Capasso is entitled to summary judgment.

### C. Exhaustion of Administrative Remedies

Defendants assert that Conaway's claim was not presented through the administrative remedy procedure and must be dismissed pursuant to 42 U.S.C. §1997e. ECF No. 8-1, p. 4. The Prisoner Litigation Reform Act provides, in pertinent part:

> (a) Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e.

As a detainee confined in a jail, Conaway is subject to the strict requirements of the exhaustion provisions. It is of no consequence whether he was aggrieved by a single occurrence,

or a general conditions of confinement claim. *See Porter v. Nussle*, 534 U.S. 516, 528 (2002) (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought may not be attainable through resort to the administrative remedy procedure. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim which has not been exhausted may not be considered by this court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). Thus, a detainee must complete the facility's internal appeals process before bringing suit. *Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (D. Md. 2003).

Administrative remedies must, however, be available to the prisoner and this Court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Ordinarily, a detainee must follow the required procedural steps in order to exhaust his administrative remedies. In *Ross v. Blake*, ____ U.S. ____, 136 S. Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. In *Ross*, the Supreme Court stated that an administrative remedy is available if it is "capable of use' to obtain 'some relief for the action complained of." *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738).

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and a prisoner's duty to exhaust available remedies "does not come into play." *Ross*, 136 S. Ct. at 1859. These are when the remedy operates as a "simple dead end-with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" the administrative

scheme might be so "opaque" as to become "practically speaking, incapable of use;" or when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Conaway claims he submitted multiple internal grievances regarding the lack of showers while housed at HCDC. ECF No. 10, p. 2. In an abundance of caution, the Court will not dismiss Conaway's claim for lack of exhaustion, but will examine the merits of his claim.

### D. Conditions of Confinement Claim

Conaway's Complaint is not a model of clarity. It is unclear whether he was denied showers on two occasions between October 31, 2016 and his transfer on November 17, 2016, or whether the denial of showers extended over a period of 17 days. What is clear is that Conaway alleges no actual injury as a result of the denial of showers over this period. Conaway lists reason why he lashed out at staff, but admits that he "was spitting on officers, destroying property, threaten[ing] officers [and] medical staff, destroying cameras, throwing food on [the] floor, throwing water [and] urine..." and otherwise posing a danger to staff and fellow detainees. ECF 10, p. 1. He does not dispute Kahler's assertion that staff attempted to provide Conaway a shower on October 29, 2016, but instead returned him to his cell due to Conaway's misbehavior.

From this record, the Court cannot conclude that the denial of showers was imposed with the express intent to punish. Giving the expertise of jail officials due deference, the Court finds that restricting Conaway's outbursts to his cell appears reasonably related to a legitimate, non-punitive goal. That he was denied showers during the 17 days prior to his transfer to another pretrial facility does not, under the facts presented here, amount to imposition of an unconstitutional condition of confinement.

## CONCLUSION

In sum, Defendants' Motion for Summary Judgment is granted. A separate Order follows.

__June 22, 2018___  _____/s/_____
Date                          RICHARD D. BENNETT
                              UNITED STATES DISTRICT JUDGE